**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| SPECIALTY CLAYS CORP, | ) | |
| Plaintiff, | ) | |
| | ) | 3:12-cv-00440-RCJ-WGC |
| vs. | ) | |
| VR BUSINESS BROKERS et al., | ) | **ORDER** |
| Defendants. | ) | |

This case arises out of the advertisement of a mine for sale without the owner's permission. Pending before the Court are two identical motions for a temporary restraining order ("TRO") and a preliminary injunction. For the reasons given herein, the Court grants the motions in part.

## I.   FACTS AND PROCEDURAL HISTORY

On June 12, 2012, Plaintiff Specialty Clays Corp.'s ("SCC") Chief Operating Officer ("COO") Carolyn Kramer discovered a listing on Defendant VR Business Broker, Inc.'s ("VR") website for a bentonite mine near Fallon, Nevada. (*See* V. Compl. ¶¶ 12–13, Aug. 17, 2012, ECF No. 1). The listing identified Defendant Gary Zolnierek of VR's Austin, Texas office as the broker. (*Id.* ¶ 13). Kramer recognized the mine as SCC's and knew that it was not for sale, so she immediately called Zolnierek at the number provided in the listing. (*Id.*). Defendant Tom Gottlieb answered and claimed he was also an agent authorized to sell the mine. (*See id.*).

During a subsequent telephone call on June 13, 2012, Gottlieb told Kramer that the mine was near Fallon, was worth approximately $2.8 billion, had a $50 million annual profit, and had 180 million tons of proven reserves. (*Id.* ¶ 15). Gottlieb told Kramer that SCC had defaulted on their lease of the mining claims and had no further interest in it. (*Id.* ¶ 16). At that point, Kramer identified herself as an officer and director of SCC and asked who had given him the listing. (*Id.* ¶ 17). Gottlieb identified a Wyoming company, Defendant Advanced Alliance Corp. ("AAC") and its employee or agent, non-party Barbara Fran. (*See id.*). Gottlieb stated that Allied Alliance had claimed it was authorized to sell the mine by the lessor, Mr. Patrie. (*Id.*). When Kramer informed Gottlieb that SCC's lease was in good standing, Gottlieb agreed to remove the listing and find out more information concerning who had requested the listing, but Gottlieb never called Kramer back. (*Id.* ¶¶ 18–19).

On June 14, 2012, SCC's Chief Executive Officer ("CEO") Curtis Harrison and Kramer called Patrie, who expressed shock to hear that someone had listed the mine for sale because he had not authorized its sale and SCC was not in default. (*Id.* ¶ 21). After further request, Gottlieb took the listing down on June 19, 2012. (*Id.* ¶ 23). Gottlieb refused, however, to provide information concerning the identities of the persons who made the listing, citing a confidentiality agreement. (*Id.* ¶ 24). He has also refused to provide evidence of his own due diligence regarding the listing. (*Id.*). About the same time, AAC moved its business to Panama. (*Id.* ¶ 25).

Plaintiff sued Defendants in this Court on five nominal causes of action: (1) Intentional Interference with Prospective Economic Advantage ("IIPEA"); (2) Negligence Per Se; (3) Negligence; (4) Injunctive Relief; and (5) Civil Conspiracy. There are three viable causes of action: the first, third, and fifth. The second nominal cause of action is a theory falling under the negligence claim, and the fourth nominal cause of action is a part of the prayer for relief. Pending before the Court are Plaintiff's two identical motions for a TRO and a preliminary injunction.

## II. LEGAL STANDARDS

The Court of Appeals in the past set forth two separate sets of criteria for determining whether to grant preliminary injunctive relief:

> Under the traditional test, a plaintiff must show: (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases). The alternative test requires that a plaintiff demonstrate either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor.

*Taylor v. Westly*, 488 F.3d 1197, 1200 (9th Cir. 2007). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Id*.

The Supreme Court recently reiterated, however, that a plaintiff seeking an injunction must demonstrate that irreparable harm is "likely," not just possible. *Winter v. NRDC*, 555 U.S. 7, 19–22 (2008) (rejecting the Ninth Circuit's alternative "sliding scale" test). The Court of Appeals has explicitly recognized that its "possibility" test was "definitively refuted" in *Winter*, and that "[t]he proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20) (reversing a district court's use of the Ninth Circuit's pre-*Winter*, "sliding-scale" standard and remanding for application of the proper standard).

The Court of Appeals later parsed the language of *Winter* and subsequent appellate rulings and determined that the sliding scale test remains viable when there is a lesser showing of likelihood of success on the merits amounting to "serious questions," but not when there is a lesser showing of likelihood of irreparable harm. *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011). This case presents some difficulty in light of *Winter* and

prior Ninth Circuit cases. To the extent *Cottrell*'s interpretation of *Winter* is inconsistent with *Selecky*, *Selecky* controls. *Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc) (holding that, in the absence of an intervening Supreme Court decision, only the en banc court may overrule a decision by a three-judge panel). In any case, the Supreme Court stated in *Winter* that "[a] plaintiff seeking a preliminary injunction must establish that he is *likely* to succeed on the merits, that he is *likely* to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, *and* that an injunction is in the public interest." *Winter*, 555 U.S. at 20 (citing *Munaf v. Geren*, 128 S. Ct. 2207, 2218–19 (2008); *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12 (1982)) (emphases added). The test is presented as a four-part conjunctive test, not as a four-factor balancing test, and the word "likely" modifies the success-on-the-merits prong in exactly the same way it separately modifies the irreparable-harm prong. In rejecting the sliding-scale test as to the irreparable-harm prong, the *Winter* Court emphasized the fact that the word "likely" modifies the irreparable-injury prong. *See id.* at 22. The word "likely" also modifies the success-on-the-merits prong. *See id.* at 20.

In summary, to satisfy *Winter*, a movant must show that he is "likely" to succeed on the merits. "Likely" means "having a high probability of occurring or being true." Merriam–Webster Dictionary, http://www.merriam-webster.com/dictionary/likely. This colloquial, lay definition of "likely" seems too stringent. Though it could be read consistently with the *Winter* language, Merriam–Webster's definition of "likely" would appear to require a showing corresponding to the clear-and-convincing evidence standard, because something with a "*high* probability" of being true has more than a mere greater-than-not chance of being true. Black's Law Dictionary, a more contextual reference work, defines the "likelihood-of-success-on-the-merits test" more leniently as "[t]he rule that a litigant who seeks [preliminary relief] must show a reasonable probability of success . . . ." *Black's Law Dictionary* 1012 (9th ed. 2009). The Court must

reconcile the cases by interpreting the *Cottrell* "serious questions" requirement to be in harmony with the *Winter*/*Selecky* "likelihood" standard, not as being in competition with it. "Serious questions going to the merits" must mean that there is at least a reasonable probability of success on the merits. Taken in a vacuum, "serious questions" appears to focus on the gravity of the issues, but appears silent on the probability of the truth of the proffered proposition, which is the focus of the success-on-the-merits prong. The gravity of the issues is separately considered under the balance-of-hardships prong. The *Cottrell* Court must have meant something like "reasonable probability," which appears to be the most lenient position on the sliding scale that can satisfy the requirement that success on the merits be "likely." If success on the merits is merely possible, but not reasonably probable, no set of circumstances with respect to the other prongs will justify preliminary relief.

## III.   ANALYSIS

Plaintiff asks the Court to enjoin Defendants from listing or otherwise representing that they are authorized to sell SCC's mine; soliciting offers to purchase the mine; or making any representations to third parties regarding Plaintiff's business or the mine. Defendants have not responded, except that after the time to respond expired, Plaintiff stipulated to give Defendants Zolnierek, Gottlieb, and Derrick Business Group, Inc. until September 11, 2012 to respond. Defendants did not respond by that date.

///

///

///

///

///

///

///

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion for Preliminary Injunction (ECF No. 2) is GRANTED and the Motion for Temporary Restraining Order (ECF No. 5) is DENIED as moot. Defendants shall not list or otherwise represent that they are authorized to sell SCC's mine, shall not solicit offers to purchase the mine, and shall not make any representations to third parties regarding Plaintiff's business or the mine.

IT IS FURTHER ORDERED that the hearing set for September 18, 2012 is VACATED.

IT IS SO ORDERED.

Dated this 17th day of September, 2012.

_____
ROBERT C. JONES
United States District Judge