**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| SPECIALTY CLAYS CORP, a Nevada Corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>SUMMIT SINGLE STAR BUSINESS GROUP, LLC, a Texas Company; ADVANCED ALLIANCE CORPORATION, a Wyoming Corporation; GARY ZOLNIEREK; TOM GOTTLIEB; ALAN F. HOLMES; and JAMES WELLS, individually; and DOES I-X,<br><br>    Defendants. | 3:12-CV-440-RCJ-WGC<br><br>**ORDER** |

Currently before the Court is Plaintiff's Application for Default Judgment (#68) and Bill of Costs (#71).

**BACKGROUND**

In August 2012, Plaintiff Specialty Clays Corp ("Plaintiff") filed its original complaint against Defendants VR Business Brokers; Derrick Business Group, Inc.; Advanced Alliance Corporation; Gary Zolnierek, and Tom Gottlieb in this Court. (Compl. (#1) at 1). Plaintiff also filed a motion for preliminary injunction and a motion for temporary restraining order. (Mot. for Preliminary Inj. (#2); Mot. for TRO (#5)). This Court granted the motion for preliminary injunction and denied the motion for temporary restraining order as moot. (Order (#18) at 6).

On October 26, 2012, the Clerk of the Court entered a clerk's default against Defendant Advanced Alliance Corporation. (Clerk's Default (#26) at 1).

In February 2013, Plaintiff filed a non-opposed motion to amend the complaint. (Mot. to Amend (#43); Non-Opp'n to Mot. to Amend (#44)). On February 26, 2013, Plaintiff filed its

First Amended Complaint ("FAC"). (FAC (#46) at 1). In the FAC, Plaintiff sued Defendants Summit Single Star Business Group, LLC; Advanced Alliance Corporation; Gary Zolnierek; Tom Gottlieb; Alan F. Holmes; and James Wells (collectively "Defendants"). (*Id.*).

The FAC alleged the following facts. (*Id.*). Plaintiff was a Nevada corporation whose sole business was mining bentonite from claims it leased near Fallon, Nevada. (*Id.*). Defendant Summit Single Star Business Group, LLC ("SSSBG") was a Texas company. (*Id.*). Defendant Advanced Alliance Corporation was a Wyoming corporation. (*Id.* at 2). Defendant Tom Gottlieb was a Texas resident. (*Id.*). Defendant Gary Zolnierek was a Texas resident. (*Id.*). Defendant Alan F. Homes was a resident of England. (*Id.*). Defendant James Wells was a Wyoming resident who purported to be an authorized representative of Advanced Alliance Corporation. (*Id.*).

The FAC alleged the following. (*Id.* at 4). On June 12, 2012, Carolyn Kramer, Plaintiff's Chief Operating Officer, discovered a listing on SSSBG's national website for a bentonite mine near Fallon, Nevada. (*Id.*). The listing identified Gary Zolnierek of VR Business Broker's Austin, Texas, office as the broker selling the mine. (*Id.*). VR Business Broker's, Austin, Texas was a d/b/a of SSSBG. (*Id.*). Kramer immediately recognized that the mine listed was Plaintiff's mine and Kramer knew that Plaintiff had not authorized anyone to sell its mine/business. (*Id.*). Kramer called Zolnierek but Tom Gottlieb claimed to be the agent or broker authorized to sell the mine. (*Id.*). When Kramer finally spoke to Gottlieb, Gottlieb told her that Plaintiff had defaulted on its lease of the mining claims and had no further interest in the project. (*Id.*). These representations were false. (*Id.*). Defendant Alan Holmes and Defendant James Wells had told a person named Jon Marshall that Plaintiff had defaulted on its lease in 2010 and no longer had any rights to the mining claims. (*Id.* at 4-5). Holmes and Wells had someone impersonate Robert Patrie, the representative of the owners of the subject claims, to confirm misrepresentations to Jon Marshall. (*Id.* at 5). Jon Marshall then provided the untrue information to Gottlieb. (*Id.*). Holmes and Wells acted to disrupt Plaintiff's business and interfered with Plaintiff's ability to put its mine into production in furtherance of a fraudulent scheme to use Plaintiff's property to wrongfully benefit themselves. (*Id.*).

2

The FAC alleged the following. (*Id.*). When Kramer identified herself as one of Plaintiff's officers and directors and asked who had given Gottlieb the listing, Gottlieb told her that Advanced Alliance had given him the listing and that the listing was signed by Barbara Loran. (*Id.*). This was false. (*Id.*). Gottlieb has since admitted that there never was a signed listing for the mine. (*Id.*). Gottlieb also told Kramer that Advanced Alliance was authorized by the lessor of the mining claims, Robert Patrie, to sell the mine, but that was also false. (*Id.*). After Kramer informed Gottlieb that Plaintiff still owned the mine, that its lease was in good standing, and that the mine could not be sold without Plaintiff's authorization, Gottlieb said he would take the listing down immediately. (*Id.* at 5-6). Gottlieb did not take the listing down immediately. (*Id.* at 6). On June 14, 2012, Kramer and Plaintiff's Chief Executive Officer Curtis Harrison called Robert Patrie. (*Id.*). Patrie stated that he had not listed the mine for sale and expressed shock to hear that the mine was listed for sale for $50 million. (*Id.*). Patrie denied speaking to Holmes and Wells. (*Id.*). Gottlieb removed the listing from his website but left duplicate listings on the internet. (*Id.* at 6-7). Jon Marshall believed that Holmes was perpetuating a scheme by which he would try to "pre-sell" the mine, then use those funds to obtain the mining claims, and dispose of Plaintiff's continuing involvement with the site. (*Id.* at 7).

The FAC alleged five claims. (*Id.* at 10-13). In the first cause of action, Plaintiff alleged intentional interference with prospective economic advantage against Holmes, Wells, and Advanced Alliance. (*Id.* at 10). In the second cause of action, Plaintiff alleged negligence against Holmes, Wells, and Advanced Alliance for deliberately trying to sell Plaintiff's business without Plaintiff's permission and for misrepresenting Plaintiff's business to third parties. (*Id.* at 11). In the third cause of action, Plaintiff sought an injunction against all Defendants. (*Id.*). In the fourth cause of action, Plaintiff alleged civil conspiracy against all Defendants. (*Id.* at 12). In the fifth cause of action, Plaintiff sought attorneys' fees against all Defendants. (*Id.* at 13). Plaintiff sought the following damages: (a) special damages; (b) general damages; (c) reasonable attorneys' fees and costs; (d) an injunction enjoining Defendants from listing or otherwise representing that they were authorized to sell Plaintiff's mine, soliciting offers to

purchase Plaintiff's company or mine, making any representations to third parties regarding Plaintiff's business or mine, and interfering with Plaintiff's business in the future; and (e) any other relief as the Court deemed appropriate. (*Id.* at 13-14).

On March 5, 2013, Plaintiff voluntarily dismissed its claims against Defendant Alan F. Holmes. (Notice of Dismissal (#50) at 1). On March 16, 2013, this Court entered an order granting the parties stipulation to voluntarily dismiss with prejudice Defendants SSSBG, Gary Zolnierek, and Tom Gottlieb. (Order (#54) at 1-2).

In May 2013, Plaintiff filed proof of service demonstrating that it had served Defendant Advanced Alliance Corporation a copy of the FAC on May 7, 2013. (Summons/Affidavit (#58) at 1-2). On May 30, 2013, Plaintiff filed a request for a clerk's default because Advanced Alliance Corporation had failed to appear or otherwise respond to the FAC. (Request for Default (#59) at 1-2). On May 31, 2013, the Clerk of the Court entered a clerk's default against Advanced Alliance Corporation. (Clerk's Default (#61) at 1).

On June 4, 2013, Plaintiff filed an affidavit of non-service as to Defendant James Wells. (Aff. of Non-Service (#62) at 2). The affidavit stated that the process server was unable to find the correct James Wells at the address listed. (*Id.*). On June 12, 2013, Magistrate Judge William Cobb granted an order permitting Plaintiff to publish a summons for James Wells in Laramie, Wyoming, and to send copies of the summons and FAC to Wells's last known address. (Order (#64) at 1-2). On August 6, 2013, Plaintiff filed proof of publication that Wells's summons had been published four consecutive times in the *Laramie Boomerang* on June 19, June 26, July 3, and July 10, 2013. (Proof of Publication (#65) at 1). On August 6, 2013, Plaintiff filed a request for entry of clerk's default against James Wells because Wells had failed to appear or otherwise respond to the FAC. (Request for Default (#66) at 1-2). On August 7, 2013, the Clerk of the Court entered a clerk's default against James Wells. (Clerk's Default (#67) at 1).

## LEGAL STANDARD

Federal Rule of Civil Procedure 55(b) provides that the "court may conduct hearings or make referrals–preserving any federal statutory right to a jury trial–when, to enter or effectuate

4

judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2)(A)-(D). "Rule 55 gives the court considerable leeway as to what it may require as a prerequisite to the entry of a default judgment." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987). "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Id.* at 917-18.

The court may consider the following factors in determining whether to exercise discretion as to the entry of default judgment: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Default judgments are "ordinarily disfavored." *Id.* at 1472.

## DISCUSSION

Plaintiff moves for default judgment against Defendants Advanced Alliance Corporation and James Wells for an injunction prohibiting them from: (a) listing or otherwise representing they are authorized to sell Plaintiff's mine; (b) soliciting offers to purchase Plaintiff's company or mine; and (c) making any representations to third parties regarding Plaintiff's business or mine. (Mot. for Default J. (#68) at 1). Plaintiff also seeks attorneys' fees in the amount of $36,137.50. (*Id.* at 2). Plaintiff filed a bill of costs with the Court and seeks costs in the amount of $14,911.18. (Bill of Costs (#71)).

**I.     Injunctive Relief**

In this case, the Court grants Plaintiff's motion for default judgment against Defendants Advanced Alliance Corporation and James Wells and issues an injunction prohibiting them from: (a) listing or otherwise representing they are authorized to sell Plaintiff's mine; (b) soliciting offers to purchase Plaintiff's company or mine; and (c) making any representations to third parties regarding Plaintiff's business or mine. In analyzing the *Eitel* factors, the Court

finds that Plaintiff would suffer prejudice if an injunction were not entered because Advanced Alliance Corporation and James Wells had tried to sell its mine without the authority to do so. The Court finds that Plaintiff's FAC sufficiently states causes of action against Wells and Advanced Alliance Corporation for intentional interference with prospective economic advantage, negligence, and civil conspiracy.[1] The Court notes that Plaintiff does not request any money but rather a permanent injunction against the remaining two Defendants. This Court notes that it has already entered a preliminary injunction in this case against Defendants. The Court finds no excusable neglect and notes that Advanced Alliance Corporation has had a clerk's default entered against it twice in this case–once for the original complaint and another for the FAC. The Court finds that the *Eitel* factors weigh in favor of granting default judgment against Defendants Advanced Alliance Corporation and James Wells and issues the requested injunction.

## II. Attorneys' Fees

The Court denies Plaintiff's request for attorneys' fees. "Nevada follows the American rule that attorney fees may not be awarded absent a statute, rule, or contract authorizing such award." *Thomas v. City of N. Las Vegas*, 127 P.3d 1057, 1063 (Nev. 2006). "In Nevada, a court may provide for an award of attorney's fees as a cost of litigation under a fee shifting statute or agreement as opposed to an element of damage only if an agreement, statute or rule authorizes such an award." *In re Dinan*, 448 B.R. 775, 786 (B.A.P. 9th Cir. 2011). Plaintiff has not demonstrated that it is entitled to attorneys' fees on any of these grounds.

## III. Costs

Federal Rule of Civil Procedure 54(d) provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs–other than attorney's fees–should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). The Court grants Plaintiff's bill of costs (#71) in the amount of $14,911.18.

///

---

[1] The Court notes that injunctive relief and attorneys' fees are not independent causes of action.

**CONCLUSION**

For the foregoing reasons, IT IS ORDERED that Plaintiff's Application for Default Judgment is GRANTED in part and DENIED in part. The Court grants the application for default judgment against Defendants Advanced Alliance Corporation and James Wells and issues an injunction prohibiting them from (a) listing or otherwise representing they are authorized to sell Plaintiff's mine; (b) soliciting offers to purchase Plaintiff's company or mine; and (c) making any representations to third parties regarding Plaintiff's business or mine. The Court denies Plaintiff's request for attorneys' fees.

IT IS FURTHER ORDERED that Plaintiff's Bill of Costs (#71) is GRANTED in the amount of $14,911.18.

The Clerk of the Court shall enter judgment accordingly.

Dated this 4th day of December, 2013.

_____
United States District Judge